WILLIAM P. PULIS ET AL., RELATORS, v. HARVEY ISER-MAN ET AL.

Argued June 8, 1904—Decided July 23, 1904.

1. The rules of church government pertaining to the True Reformed Dutch Church, when interpreted in the light of the history of that denomination, sanction the right of each particular congregation to withdraw from the classis and synod with which it had been connected and become independent, without loss of ecclesiastical or civil function.

2. A congregation, which by unanimous vote of its members has thus withdrawn, retains the right of electing its own minister, elders and deacons, who under our statute are the trustees of the civil corporation, and the classis, to which the congregation was previously subordinate, has no power to remove the officers so elected.

On rule to show cause why leave to file an information should not be granted.

Before Justices DIXON and HENDRICKSON.

For the relators, *John B. Humphreys.*

For the defendants, *William H. Corbin.*

The opinion of the court was delivered by

DIXON, J.  The relators ask leave to file an information requiring the defendants to show by what authority they exercise the franchises of the corporation known as "The Minister, Elders and Deacons of the True Reformed Dutch Church of Paramus."

Prior to 1822, the congregation of which this corporation is the outcome was one of the churches of the Reformed Dutch Church, but in that year it and several others seceded from that denomination and soon afterwards formed the "Classis of Hackensack of the True Reformed Dutch Church." Subsequently the congregations represented in this classis joined with other similar congregations, represented in the classis of Union, to constitute the "Synod of the True Reformed Dutch Church." In 1864 the classis of Union was dissolved, and thereupon the synod necessarily ceased to exist. In 1890 the classis of Hackensack formed a union with the synod of the Holland Christian Reformed Church, a body organized by several western congregations which also had seceded from the Reformed Dutch Church, and thereafter the united body became known ecclesiastically as the Christian Reformed Church. From that time until 1898 the congregation of the Paramus church sent its delegates to the classis of Hackensack and the synod of the Christian Reformed Church, but in December of that year it resolved to withdraw from those organizations and to apply for reception as a church and congregation under the care of the Presbytery of Jersey City, one of the judicatories of the Presbyterian denomination. At the meeting which adopted this resolution fifty-three persons,

including all the members of the congregation entitled to vote except ten, were present, and unanimously voted in favor of the resolution, beside four of the absent members, who by proxy voted likewise. In February, 1899, the congregation was so received by the Presbytery and became known, ecclesiastically, as the First Presbyterian Church of Ridgewood.

In 1839 the congregation of the Paramus church became incorporated under our Religious Societies' act (*Gen. Stat., p.* 2735, §§ 19–24, 98), and from that time to the present has preserved its substantial identity.

The defendants are the minister, elders and deacons chosen by that congregation and actually managing its ecclesiastical and temporal affairs.

The relators are persons claiming to be elders and deacons by virtue of proceedings taken by the classis of Hackensack. In December, 1902, that classis voted to depose and remove from their offices the defendants then in office and the predecessors of the other defendants, and in March, 1903, a committee of the classis, assuming that there was then no consistory of the congregation, called a meeting, which was attended by sixteen persons who at some time had been members or coherents of the congregation, and they chose the relators to the offices named.

The foregoing narrative makes it plain, I think, that the *congregation* of the Paramus church is the body which selected the defendants as its officers, not that which selected the relators. In common acceptation, as well as by the express declaration of the Synod of Dort, to which both parties in this controversy appeal, a "congregation" is a "worshiping assembly." From its inception under the auspices of the Reformed Dutch Church until the present time, the body represented by the defendants has without intermission been a worshiping assembly. Its separation from the original denomination, in 1822, did not affect its identity as such, nor could its separation from the classis and synod in 1898. On the other hand, the body represented by the relators has never been in truth a worshiping assembly. Even if the gathering of its

incoherent members can be called an assembly, the purpose of the assembly has been, not worship, but litigation. The relators may be regarded as representing the classis of Hackensack; they cannot be deemed the choice of the congregation of the Paramus church.

We are therefore brought to the question whether, under our law, the congregation, or some other body, has the right to appoint the minister, elders and deacons, who, according to our statute, are the trustees of the civil corporation whose franchises are now in dispute. The statute provides that these trustees shall be elected, appointed or called according to the manner, usages and customs of the Reformed Dutch Church, and hence we must turn again to the rules prescribed by the Synod of Dort. There it is declared as follows: "No particular congregation can be regularly constituted and organized without officers duly chosen by the members. * * * The original right to choose all their own officers, whether minister, elders or deacons, properly belongs, according to the Scriptures, to every particular congregation of saints. * * * This right belongs not to a consistory, to a classis or presbytery, to a patron or to a civil magistrate, and may not be exercised by any individual or individuals at any time contrary to the wishes of a majority of the congregation, without being guilty of an assumption of power that does not belong to them."

These excerpts show that the right to choose those who, according to our statute, are the trustees of the corporation, rests exclusively with the congregation, and results, not from any denominational edict or connection, but from the Scriptures, to which all Christian denominations appeal. Ecclesiastically, therefore, the right must remain with the congregation so long as the authority of the Scriptures is recognized, whether the congregation stands within or without the pale of denominational unity.

But it is urged that according to the decision in *Den* v. *Bolton,* 7 *Halst.* 206, which dealt with the rules promulgated by the Synod of Dort, those members of the congregation

who renounced allegiance to the classis thereby abandoned their rights as members.

The circumstances in Den *v.* Bolton differed from those now present in two important respects. There the congregation divided on the question of withdrawal from the Reformed Dutch Church, and this court held that under the rules of that church the same congregation could be constructed by the classis out of the members who had opposed the separation. But here every member of the congregation, either expressly by his vote or impliedly by his absence after due notice, assented to the withdrawal, so that no loyal elements existed for reconstruction, and the collection of individuals gathered by the classis was of necessity a new assemblage. In the second place, whatever ground there was in the tenets of the Reformed Dutch Church for denying the right of a congregation to dissolve its connection with classis and synod, must be lacking in the tenets of the True Reformed Dutch Church, for its whole ecclesiastical establishment is founded on the assertion of such a right. So far as appears before us, there is no congregation in the church which has not reached its place there through withdrawal from some other denomination. Although these congregations adopt the words of the Synod of Dort as a statement of their theory of church government, yet they must be deemed to understand those words in the sense indicated by the fundamental history of their organization. As applied to the Reformed Dutch Church, this court said those words denied the right of congregational secession; as applied to the True Reformed Dutch Church, we are constrained to say that, as they contain no explicit declaration on the subject, they must be regarded as permitting that right.

That the Paramus congregation, when by unanimous vote it separated from classis and synod, did not *ipso facto* lose its congregational or corporate character, is a proposition supported by the decisions in *Doremus* v. *The Dutch Reformed Church,* 2 *Gr. Ch.* 332, and *Den* v. *Pilling,* 4 *Zab.* 653, and if, as we think, it thereby exercised its right of secession, it be-

came an independent congregation. The authority of classis and synod over it being thus terminated, the subsequent attempts of classis to reconstruct that congregation or to transfer its franchises to a new congregation were futile. According to its own ecclesiastical law the congregation had ceased to be subordinate to the classis, and hence the classis was not, in the words of our statute, "the superior church judicature to which the congregation was subordinate." Consequently the classis had neither ecclesiastical nor civil authority to remove the officers of the congregation and invest another body with power to choose their successors.

It is further urged that the question before us was decided by this court adversely to the defendants in *True Reformed Dutch Church* v. *Iserman,* 35 *Vroom* 506. That decision was rendered on an incidental motion, in an action of ejectment between other parties, which finally resulted in a judgment for the defendants; consequently it cannot be deemed *res judicata.* Moreover, it concerned a question of fact only, and a perusal of the opinion there published shows that the circumstances now disclosed were very inadequately presented to the court. The history of the church which affirms, and the rules of the church which do not deny, the right of a congregation to withdraw from a denomination and stand independent of it without loss of ecclesiastical or civil function, the unanimity of the congregational vote by which such withdrawal was effected, and the lack of real congregational character in the few individuals who *ex post facto* expressed dissent from that vote, seem not at all to have been brought to the attention of the court when that decision was rendered. But these are the leading facts which must guide our judgment.

In view of all the circumstances, we think the defendants should not be vexed with further avoidable litigation, and that substantial justice will be promoted by withholding from the relators the privilege of filing an information against the defendants.

The rule to show cause is discharged, with costs.